OPINION
This is an appeal from the decision rendered in a bench trial in Guernsey County Common Pleas Court wherein defendant-appellant was found guilty of corruption of a minor. A sentence of six months was imposed based upon the requirements of S.B. 2 with imposition deferred pending this appeal. The facts in this cause are that the victim, Elizabeth Bond (E.B.), was 15 years old at the time of the events described at trial. Defendant-appellant, C. Edward Stocker (E.S.), age 35, was a chiropractor treating Elizabeth Bond over several months due to sports-related and auto accident injuries. Over the course of treatment of either 13 or 18 visits, somewhat of a relationship developed between appellant and appellee, during which personal matters were discussed. Arrangements were made that E.B., after receiving a treatment on 11/12/99, was to be driven to the home of E.S. to baby-sit his children, while he and his wife went out to dinner. E.B.'s father, Steven Bond, offered to either pick up his daughter or meet E.S. halfway after babysitting, as her parents' farm was a significant distance from Cambridge. E.S. assured the father that either he or his wife would bring her home. E.S. consumed some beer at dinner and after arriving home, E.S. then left with E.B. to be driven to her home. E.S. stopped at a convenience store and purchased a 40 oz. bottle of beer, made a brief return stop at his home and then proceeded to drive E.B. home. The testimony deviates somewhat as to the directions provided. However, at some point, both E.B. and E.S. consumed some of the beer with the latter drinking the bulk of it. E.S. passed the farm residence of E.B., threw the empty 40 oz. bottle from the vehicle and pulled to a stop. Some kissing occurred by both parties, which E.S. admits. E. B. testified that E.S. unzipped her jeans, placed his hands inside her panties and digitally penetrated her vagina. E.S. indicated that E.B. unzipped the jeans, rather than he, and denies the contact inside her pants and denies the digital penetration. He admits, however, that he rubbed her crotch area, claiming that he did so on the outside of her clothing. Testimony was elicited that E.S. discussed sexual acts, his past sexual conduct and his having paid for the cost of abortions in the past. None of this was denied by E. S. on cross examination. Admittedly, E.B., was upset by what had occurred and E.S. proceeded to drive her home. No statements as to these events was related by E.B. to either parent although her mother, Michelle Bond, noticed that her daughter appeared flushed upon entering the home. On each of the next two days, Saturday and Sunday, E.S. appeared with an acquaintance at the farm but he indicated this was related to hunting. On the following Monday and thereafter, at the high school where E.B. was a student, her conduct elicited inquiry from a fellow student, coach, secretary and eventually led to an investigation. E.B. and her mother consented to being "wired" for an office visit to E.S. While the tape was deficient, Detective John Davis, Detective Ron Pollock and Melissa Keylor testified as to the overheard conversations. These included flattering remarks by E.S., sexual discussion, including that she was "hot", and the existence of a relationship between the two. None of these statements were denied by E.S. who testified at trial. After trial, E.S. having waived a jury, the Court found him guilty of corruption of a minor and imposed sentence as stated previously. Defendant-appellant raises two assignments of error:
 ASSIGNMENTS OF ERROR: I THE TRIAL COURT DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY ADMITTING AND RELYING UPON INADMISSIBLE HEARSAY EVIDENCE THAT IMPROPERLY CORROBORATED THE TESTIMONY OF THE ALLEGED VICTIM
 II APPELLANT'S COUNSEL'S FAILURE TO OBJECT TO EXTREMELY PREJUDICIAL EVIDENCE AND FAILURE TO CONDUCT ANY MEANINGFUL CROSS-EXAMINATION OF THE STATE'S WITNESSES CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, AND THEREBY DEPRIVED APPELLANT OF HIS RIGHTS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION
 I, II
Each of the assignments of error relates to testimony admitted or partially admitted by the trial court. The second assignment relates to lack of objections or claimed ineffective cross examination by trial defense counsel. The objectionable testimony according to defendant-appellant is as follows, with the numbered references being to specific pages of the transcript: T. at 31-32, 34, 37, 46-47, 50, 52, 57-59, 66, 71, 77, 82, 98, 115, 263, 279, 280-281. The objections relative to T. at 263 and 279 relate to the prosecutors's comments and the objections on T. at 280-281 reference the Court's statement and its determination of the evidence and the credibility of witnesses prior to the indication of the verdict. In addition, defendant-appellant cites language in the Court's decision which is claimed to be a reliance upon inadmissable hearsay testimony. In opposition thereto, appellee states that the testimony was not hearsay as falling under the excited utterance exception. The definition of hearsay is that it is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801. Other matters relative to the hearsay rule would be the exception for excited utterance under Evid.R. 803. Such is a statement relating to a startling event or condition made while the declarant was under the stress of the excitement caused by the event or condition. It should be noted that the Court sustained the appellant's trial counsel's objections during discussions on T. at 47-49, 67-68, 70-71 as being hearsay and not within such excited utterance exception due to time lapse subsequent to the event which is alleged to have taken place. Other aspects relative to the Court's admission or lack thereof as to testimony which may be relative in this matter are under Evid.R. 801(D)(2) as an admission by a party opponent. Such statement is offered against a party and is his own statement, in either his individual or representative capacity. In addition to that rule, Evid.R. 803 subparagraph (3) recites that an exception exists when the statements relate to a then existing state of mind, emotion, sensation or physical condition. At this point we will address the language contained in the trial court's decision: Having followed the rule of law and the guidance the law provides, the Court finds from all of the facts in evidence that the testimony of Elizabeth Bond, the victim in this case, is worthy of belief and the testimony of the [Appellant] is not worthy of belief on the central issue of his digital penetration of her vagina. The Court finds that the victim's statements from the beginning of this case were consistent. The objections to the closing arguments of the prosecutor are based upon the following statement: The Court should believe Elizabeth Bond in this case and here's why. Elizabeth Bond from the day after this occurred described the events of what happened to her, has never changed her story, she described the events the morning after this happened [to Michelle Fuller], she described the events to her teachers on Monday, to the law enforcement personnel, to Carol Dunnigan, to Renee Lyons; all the time maintaining what happened to her that she was penetrated. In doing so, Your Honor, there has not been any reason brought forward before this Court that Elizabeth had any reason to lie about that. At a bench trial the Court is presumed to eliminate any inadmissable testimony in arriving at a conclusion. A reviewing Court must presume the trial court applied the law correctly. State v. Coombs (1985), 18 Ohio St.3d 123, 125 citing State v. Eubank (1979), 60 Ohio St.2d 183. Where findings are general, an appellate Court will assume regularity rather than irregularity in the trial court's findings. Here, the Court stated that the victim's statements did not change during the case. The issue then becomes whether the Court was referring to inadmissable testimony with this reference. Because the Court sustained appellant's objections to the victim's stories to her parents, school/friend, school and investigative persons, it had no statements made prior to presentment of the case on which to rely. The matters presented by the evidence were the testimony of the events by the victim, the "wired" testimony of Defendant-Appellant and the admissions or lack of denial by him as to everything the victim had stated on the witness stand with regard to the criminal conduct charged, except for the digital penetration and the initiation of certain events preparatory to such admitted conduct. The Court had no testimony as to statements made preceding presentation of the case testimony. The victim's statements, with the above-referenced exceptions denied by appellant were corroborated by the defendant's testimony and the "wired" conversations. The Court heard nothing as to prior statements. Therefore, it would be a misreading of the Court's opinion and his reliance on the consistency of the victim's statements to conclude that the Court relied on pre-case recitals. We must conclude that such was not done by the Court and that the judge can be presumed to have relied solely on admissible testimony. While this Court agrees that the statements made by the prosecutor in the closing arguments as referenced on T. at 261-263 were improper as not based upon the evidence presented to the Court since the Court did not hear the content of any statements made by the victim to her school mate or teachers or investigating authorities, the test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990)51 Ohio St.3d 160. The Court here finds that based upon the ability of the judge to disregard inadmissable testimony that the argued conduct referenced as to the prosecutor were not statements that substantially affected the rights of the defendant. The Court now will address the aspect of ineffective assistance of counsel. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether the counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993) 113 S.Ct. 838. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly differential. State v. Bradley (1989) 42 Ohio St.3d 136, 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. As appellant admitted to the conduct, except for the digital penetration, this Court cannot so conclude. An attorney is not ineffective in failing to raise an objection which would have been denied. State v. Gibson (1980) 69 Ohio App.2d 91, 95. Counsel's decision not to object was clearly a matter of trial strategy and as such cannot be regarded as ineffective assistance of counsel in this cause, primarily because everything had been admitted by the defendant with the exception of the digital penetration. See State v. Coleman (1989), 45 Ohio St.3d 298,308. Based upon the reasons set forth herein, the Court determines that the assignments of error I and II, are not well taken and that there were no constitutional rights affected by the determination of the Court as to a guilty verdict, as the Court being the trier of fact had the principal responsibility for determining the credibility of the witnesses and the relative weight attributable to their testimony. State v. Jameson (1990) 40 Ohio St.3d 182. There was ample evidence before the Court to determine the guilt of the defendant in this cause.
The judgment of the Trial Court is affirmed.
 ___________ Boggins, J.
Gwin, P.J. concurs Hoffman, J. concurs separately.